IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In re:                              :
                                    :
SOR ANGIE MEDINA ROSADO,            :    Case No. 04-01972 (GAC)
                                    :
          Debtor                    :    Chapter 7
_____:
                                    :
WILFREDO SEGARRA MIRANDA,           :
Chapter 7 trustee,                  :
                                    :
          Plaintiff,                :
                                    :
          v.                        :    Adv. No. 05-00280
                                    :
DORAL FINANCIAL CORP. D/B/A         :
HF MORTGAGE BANKERS,                :
SOR ANGIE MEDINA ROSADO,            :
                                    :
          Defendants                :
_____:


<u>DECISION AND ORDER</u>

The debtor filed a petition under Chapter 13 on February 25, 2004.  On March 21, 2005, Doral Financial Corp. ("Doral") filed a motion for relief from the automatic stay based on the debtor's arrears in her mortgage.  At the time of the filing of the motion, Doral indicated that the principal was $151,448.13 and the arrears were $9,114.74.  The debtor did not oppose the motion and the motion for relief from stay was granted.

On April 19, 2005, one day after Doral was granted relief from stay, the debtor filed a motion to convert to Chapter 7.  Wilfredo Segarra Miranda was appointed as Chapter 7 trustee on June 17, 2005.  On August 11, 2005, the debtor filed amended schedules

1

indicating that she intended to retain her residence and reaffirm her debt to Doral.  The debtor scheduled the property with a value of $182,050.00 and the secured debt to Doral in the amount of $182,022.24.  The debtor thereafter sought to reconvert to Chapter 13, which the trustee opposed and the debtor later withdrew the request.

On September 27, 2005, the trustee filed this adversary proceeding seeking to avoid Doral's lien on the property, alleging that Doral refinanced the property on August 17, 2005, after the conversion to Chapter 7, without the Court's authorization.  The trustee claims that the real property was property of the estate and that the post-petition lien is avoidable.  While the adversary was pending, the trustee learned that Doral had scheduled the public sale of the residence and he sought to stay the sale of the property (dkt. #35), which the Court stayed (dkt. #36).

The trustee filed a motion for summary judgment on October 25, 2006 (dkt. #28).  Doral opposed the motion for summary judgment and filed a cross motion for summary judgment (dkt. #31).  The trustee filed a reply (dkt. #34), Doral filed a sur-reply (dkt. #41) and the trustee opposed the sur-reply (dkt. #42).

Doral admits that it refinanced the mortgage on the debtor's residence, increasing the amount of the secured debt to the principal amount of $200,000 and that it did not seek bankruptcy court authorization for the refinancing.  Doral argues that there

was no equity in the property for the estate and that if the lien is avoided, Doral will be still be secured as to the amount of the previous lien. Thus, Doral contends that avoidance of the lien will be of no benefit to the unsecured creditors of the estate.

The trustee contends that although the stay was lifted, the real property remained property of the estate, as it was not abandoned by the trustee. The trustee also contends that the property is worth more than the debt to Doral and it was argued at the hearing that Doral itself had an appraisal of the property in the amount of $250,000.

After a hearing, the Court took the matter under advisement.

DISCUSSION

The Court notes at the outset that Doral is a sophisticated lender with competent bankruptcy counsel. The Court is disturbed by Doral's cavalier attitude in refinancing property, with knowledge of a bankruptcy proceeding, without the Court's approval. This is exacerbated by Doral's conduct in seeking to foreclose the new lien while an adversary proceeding to avoid it is pending. This is not conduct that can be condoned.

Doral did obtain relief from the automatic stay to foreclose its prepetition security interest in the debtor's property, but this does not equate with an abandonment of the property.

> When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor's property. Although the property may pass from

3

the control of the estate, that does not mean that the estate's interest in the property is extinguished. *See Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1437 (11th Cir. 1989). "Relief from an automatic stay entitles the creditor to realize its security interest . . . in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee." *Nebel v. Richardson (In re Nebel)*, 175 B.R. 306, 312 (Bankr.Neb. 1994)(citing *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516, 1520 (5th Cir. 1989)). Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and "the act of lifting the automatic stay is not analogous to an abandonment of the property." *Id*. at 311 (citing *In re Ridgemont Apartment Assocs.*, 105 B.R. 738, 741 (Bankr.N.D. Ga. 1989).

Catalano v. Comm'r of Internal Revenue, 279 F.3d 682, 686-87 (9th Cir. 2002); Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1520 (5th Cir. 1989); Brook Valley IV v. Schropp (In re Brook Valley IV), 347 B.R. 662, 671 (B.A.P. 8th Cir. 2006).

This Court rejects the minority line of cases that hold that relief from stay can be equated with abandonment. See e.g. In re Griggs, 82 B.R. 532 (Bankr.W.D.Mo. 1988) and its progeny. Holding otherwise would be contrary to the provisions of 11 U.S.C. § 554, which governs abandonment. Brook Valley IV, 347 B.R. at 671. As stated by the court in Nebel v. Richardson, 175 B.R. 306 (Bankr.D.Neb. 1994):

> [i]f the two provisions [§ 362 and § 554] were analogous, Section 554 would be superfluous in any case in which relief from stay was granted. This result would conflict with the principle that the Court should read and apply the plain language of the Bankruptcy Code. Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

Id. at 311-12. Accordingly, in the present case, the Court

4

concludes that the debtor's real property remained property of the estate after Doral was granted relief from stay. <u>Brook Valley IV</u>, 347 B.R. at 671.

Moreover, the Bankruptcy Code provides, with exceptions not present here, that

> when a case under chapter 13 of this title is converted to a case under another chapter under this title-property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.

11 U.S.C. § 348(f)(1)(A). Thus, when the debtor converted her case from Chapter 13 to Chapter 7, her interest in her residence transferred to the Chapter 7 estate by operation of law. The trustee also became the sole representative of the estate. 11 U.S.C. § 323(a).

The Bankruptcy Code provides that the trustee may avoid a post-petition transfer of property of the estate that is not authorized by the court or otherwise authorized by the Bankruptcy Code. 11 U.S.C. § 549(a). "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Fed. R. Bankr. P. 6001.

In the present case, bankruptcy court approval was necessary to effect the refinancing. The debtor and Doral failed to obtain court approval for the refinancing. While Doral claimed in its pleadings that the property did not have equity for the estate, Doral did not dispute the trustee's statement that Doral's

appraisal at the time of the refinancing was in the amount of $250,000.00.  In any event, the actual value does not bear on the trustee's ability to avoid the unauthorized transfer.

Doral contends that if its security interest is avoided, it will revert to the position that it occupied prior to the refinancing, i.e. it will be secured by its original lien.  But, the original lien was voluntarily extinguished by Doral.  As explained by the First Circuit Court of Appeals:

> in refinancing there are multiple transactions, including a new loan to the debtor, a mortgage back from the debtor to the new lender, a pre-arranged use of the proceeds of the loan to pay off the old loan and the release of the old mortgage.  Thus, new proceeds are generated, nominally for the benefit of the debtor, and the debtor, by making a new mortgage, transfers a property interest to the new lender.

Lazarus v. Greater Atlantic Mortgage, 478 F.3d 12, 15-16 (1st Cir. 2007).  While the First Circuit in Lazurus grappled with the issue of whether the earmarking defense could be applied to protect a mortgage from avoidance, the Court faced issues very similar to those posed here.  In Lazurus, as in the present case, the Court recognized that avoidance of the transaction would cause the lender to lose its status as a secured creditor, and the Court stated that "the penalty is not without a general benefit-*pour encourager les autres* [to encourage the others]-and is easily avoided [by complying with the directives of the statute]."  Id. at 16.  That is to say that avoidance of Doral's lien in this case will set a precedent that the refinancing of mortgage loans of debtors in

bankruptcy can not be contemplated without the bankruptcy court's approval.

The Court concludes that the debtor's real property remained property of the estate in spite of the order granting Doral relief from the automatic stay to foreclose its prepetition security interest. Likewise, the Court concludes that Doral's refinancing was unauthorized and subject to avoidance. Because the lien will be avoided and because Doral voluntarily cancelled its original lien, the Court concludes that Doral is an unsecured creditor and that it will share in a pro rata distribution with the other unsecured creditors upon the sale of the property by the Chapter 7 trustee.

ORDER

WHEREFORE IT IS ORDERED that the trustee's motion for summary judgment (dkt. #28) shall be, and it hereby is, GRANTED.  Doral's cross-motion for summary judgment (dkt. #31) is DENIED.

IT IS FURTHER ORDERED that Doral's lien, established in Deed No. 119 of August 17, 2005, before Notary Public Ariel Obed Caro Perez, is AVOIDED and the Registrar of Property for the Third Section of San Juan, Department of Justice of the Commonwealth of Puerto Rico, is directed to cancel the lien.

SO ORDERED.

San Juan, Puerto Rico, this 26th day of September, 2007.

BY THE COURT:

s/ Gerardo A. Carlo

_____
GERARDO A. CARLO
U.S. Bankruptcy Judge